# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Civil Action No. _____

ULISES FERNANDEZ MIRO, an individual,

    Plaintiff,

v.

JOHN DOE, an individual;
and BINANCE HOLDINGS, LTD. d/b/a Binance, a foreign company;

    Defendants.

_____/

## COMPLAINT FOR DAMAGES

Plaintiff ULISES FERNANDEZ MIRO, an individual (hereafter referred to as "Plaintiff"), by and through undersigned counsel, hereby sues Defendants JOHN DOE, an individual; and BINANCE HOLDINGS, LTD. d/b/a Binance, a foreign company ("BINANCE"); for damages. As grounds therefor, Plaintiff alleges the following:

## PRELIMINARY STATEMENT

1. This action arises from a fraudulent scheme that sought to, and ultimately did, steal Four Hundred Eighty-Eight Thousand Dollars ($488,000.00) worth of cryptocurrency from Plaintiff.

2. JOHN DOE played a material role in the scheme to steal Plaintiff's assets and currently possesses -- in an account maintained at cryptocurrency exchange BINANCE -- Plaintiff's stolen property.

3. Plaintiff brings this lawsuit to recover his stolen assets.

## **PARTIES, JURISDICTION AND VENUE**

### **THE PARTIES**

#### **Plaintiff**

4.  Plaintiff ULISES FERNANDEZ MIRO is an individual domiciled in Palm Beach Gardens, Florida, is a citizen of the state of Florida, and is *sui juris*.

#### **Defendants**

5.  Defendant JOHN DOE is an individual and, upon information and belief, is *sui juris*.

6.  Defendant BINANCE is a foreign company which, upon information and belief is registered and headquartered with its principal place of business in the Cayman Islands, though it professes to not have a principal executive office.[1]  BINANCE is a digital currency wallet and money transmitter services platform where merchants and consumers exchange digital currencies like bitcoin and Ether.

7.  BINANCE refers to itself as an "ecosystem" comprising several interrelated components.  The company's Terms of Service define BINANCE as follows:

> **Binance** refers to an ecosystem comprising Binance websites (whose domain names include but are not limited to https://www.binance.com), mobile applications, clients, applets and other applications that are developed to offer Binance Services, and includes independently-operated platforms, websites and clients within the ecosystem (*e.g.*, Binance's Open Platform, Binance Launchpad, Binance Labs, Binance Charity, Binance DEX, Binance X, JEX, Trust Wallet, and fiat gateways).

Among the platforms/websites within the BINANCE ecosystem is Binance.US, which serves customers in the United States, including in this jurisdiction.  Collectively, all of these components of the "ecosystem" constitute BINANCE.

---

[1] Paddy Baker, *Binance Doesn't Have a Headquarters Because Bitcoin Doesn't, Says CEO,* COINDESK (May 8, 2020), https://www.coindesk.com/binance-doesnt-have-a-headquarters-because-bitcoin-doesnt-says-ceo.

SILVER MILLER
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

8.      Additionally, numerous public reports have identified BINANCE as perhaps the largest vehicle in the world through which cryptocurrency assets are laundered by U.S. residents, *to wit*:

> Binance Holdings Ltd. is under investigation by the [United States] Justice Department and Internal Revenue Service, ensnaring the world's biggest cryptocurrency exchange in U.S. efforts to root out illicit activity that's thrived in the red-hot but mostly unregulated market.
>
> \*                    \*                    \*
>
> The firm, like the industry it operates in, has succeeded largely outside the scope of government oversight. Binance is incorporated in the Cayman Islands and has an office in Singapore but says it lacks a single corporate headquarters. Chainalysis Inc., a blockchain forensics firm whose clients include U.S. federal agencies, concluded last year that among transactions that it examined, more funds tied to criminal activity flowed through Binance than any other crypto exchange.[2]

9.      Furthermore, BINANCE publicly announced in January 2022 that it was teaming up with the National Cyber-Forensics and Training Alliance (NCFTA) -- an American non-profit entity with offices in spanning across the United States -- to "fight against cybercrime, ransomware, and terrorism financing."[3]  According to Tigran Gambaryan, Vice President of Global Intelligence and Investigations at BINANCE:

> Joining the NCFTA is an important step in our joint fight against cybercrime, securing the cryptocurrency ecosystem for the entire community.  Binance aims to be the leading contributor in the fight against cybercrime, ransomware, and terrorism financing.  We will continue our fight against cybercrime and increase our level of cooperation and transparency through our partnership with the NCFTA.[4]

---

[2] "Binance Faces Probe by U.S. Money-Laundering and Tax Sleuths," *Bloomberg*, May 13, 2021, https://www.bloomberg.com/news/articles/2021-05-13/binance-probed-by-u-s-as-money-laundering-tax-sleuths-bore-in.

[3] "NCFTA onboards crypto exchange Binance to fight against cybercrime," *CoinTelegraph*, Jan. 18, 2022, https://cointelegraph.com/news/ncfta-onboards-crypto-exchange-binance-to-fight-against-cybercrime

[4] "Binance Becomes the Blockchain and Cryptocurrency Industry's First to Join the National Cyber-Forensics and Training Alliance (NCFTA)", *PR Newswire*, January 18, 2022, https://www.prnewswire.com/news-releases/binance-becomes-the-blockchain-and-cryptocurrency-industrys-first-to-join-the--national-cyber-forensics-and-training-alliance-ncfta-301462332.html.

SILVER MILLER
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

The press release related to this announcement even states: "To date, Binance has cooperated with hundreds of criminal investigations, which have led to high-profile arrests, including a cybercriminal group laundering $500M in ransomware proceeds."[5] "Cooperation" only takes place voluntarily, which BINANCE clearly has done in "hundreds of criminal investigations" and through its "partnership" with the American-based NCFTA and its activities throughout the United States, including -- upon information and belief -- within this jurisdiction.

10. At all times material hereto, JOHN DOE has maintained -- and continues to maintain as of the date of this filing -- an account at BINANCE in which JOHN DOE holds the cryptocurrency stolen from Plaintiff.

## Other Liable Persons/Entities

11. In addition to Defendants, there are likely other parties who may be liable to Plaintiff, but about whom Plaintiff currently lacks specific facts to permit him to name these persons or entities as party defendants. By not naming such persons or entities at this time, Plaintiff is not waiving his right to amend this pleading to add such parties, should the facts warrant adding such parties.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and is an action between citizens of different states.

13. This Court has personal jurisdiction over Defendants because they: (a) operate, conduct, engage in and/or do business within this jurisdiction; (b) committed a tort in this jurisdiction; and/or (c) reside in this jurisdiction.

---

[5] *Id.*

**Specific Jurisdiction**

14. This suit arises out of or relates to Defendants' contacts with this forum.

15. Plaintiff is a resident of Florida, and he suffered harm in part because BINANCE's unreasonably lax AML and KYC procedures encouraged hackers by providing them a marketplace where they could easily launder stolen digital assets.

16. Plaintiff's claims also involve harm suffered in Florida, as his cryptocurrency assets were stolen and laundered through computer servers in Florida.

17. Plaintiff's claims also arise out of or relate to forum-related activities. For example, Plaintiff's conversion claim arises out of or relates to JOHN DOE stealing, and BINANCE taking possession of, Plaintiff's stolen cryptocurrency when it was transferred from Plaintiff's possession in Florida to the BINANCE exchange.

18. Exercising jurisdiction over Defendants in this forum is reasonable and comports with fair play and substantial justice.

**General Jurisdiction over Binance**

19. This Court may assert general jurisdiction over a corporation if the corporation is incorporated in Florida, if the corporation has its principal place of business in Florida, or if the corporation's affiliations with Florida are so "continuous and systematic" as to render it essentially at home here.

20. As noted above, BINANCE voluntarily works with American law enforcement agencies to "fight against cybercrime, ransomware, and terrorism financing." Upon information and belief, those law enforcement agencies include some in Florida.

21. Moreover, BINANCE uses various third-party companies, including companies located within this judicial district, to enable what BINANCE calls its "ecosystem" to function.

22. BINANCE makes clear in the "Binance Terms of Use" that its users must agree to that it considers its fiat gateways, including Binance.US, to be part of the "ecosystem" that defines "Binance." After expressly defining "Binance" to include "fiat gateways" the Terms of Use also explain that the fiat gateways are part of the services BINANCE provides:

> **Binance Services** refer to various services provided to you by Binance that are based on Internet and/or blockchain technologies and offered via Binance websites, mobile applications, clients and other forms (including new ones enabled by future technological development). Binance Services include but are not limited to such Binance ecosystem components as Digital Asset Trading Platforms, the financing sector, Binance Labs, Binance Academy, Binance Charity, Binance Info, Binance Launchpad, Binance Research, Binance Chain, Binance X, Binance Fiat Gateway, existing services offered by Trust Wallet and novel services to be provided by Binance.

In short, BINANCE's Terms of Use inform consumers that a "Binance Fiat Gateway" -- one of which is San Francisco-based BAM d/b/a Binance.US -- is a service provided by BINANCE.

23. Furthermore, in February 2022, BINANCE launched several celebrity-fueled advertisements during the Super Bowl to solicit accountholders in the United States, including in this jurisdiction.

24. According to a BINANCE press release:

> The global campaign – featuring global superstar and entrepreneur J Balvin, all-star basketball forward Jimmy Butler and mixed martial arts fighter Valentina Shevchenko – focuses on encouraging consumers to do the research and learn crypto themselves, so they can be empowered and accountable for their own financial freedom and success.
>
> On February 13, the day of the Big Game, for every commercial aired during the game with a celebrity "talking crypto", viewers are encouraged to sound Binance's #CryptoCelebAlert at CryptoCelebAlert.com to claim one of 2,222 POAP NFTs featuring Jimmy Butler. More importantly, they can access an easy-to-read crypto primer to better understand the basics of crypto.[6]

---

[6] https://www.binance.com/en/blog/community/binance-unites-j-balvin-jimmy-butler-and-valentina-shevchenko-to-take-on-big-game-crypto-ads-invites-fans-to-sound-the-cryptocelebalert-and-trust-themselves-to-learn-crypto-421499824684903392.

25. Jimmy Butler, one of the featured celebrities promoting BINANCE, has played for the past several seasons for the National Basketball Association's Miami Heat, where he has over 6,500,000 followers on Instagram, more than 2,500,000 followers on Facebook, and more than 800,000 followers on Twitter.

26. As Mr. Butler himself espouses in the video on CryptoCelebAlert.com: "*BINANCE and I, we're here to tell you: Trust yourself, and do your own research.*"



Mr. Butler -- a Miami-based celebrity with a legion of fans across South Florida and elsewhere -- is clearly promoting BINANCE's business interests in this jurisdiction to his many followers.

27. Technology has opened up new avenues for solicitation. A new means of solicitation, though, is not any less of a solicitation.

28. In addition, many other cryptocurrency owners in the United States use BINANCE's services -- even where those services are not permitted by law and where BINANCE publicly claims it does not provide its services.

29.     While BINANCE publicly claims it does not permit United States-based customers to use its services -- something it purports to monitor by tracking the geo-location of the IP Address used by the customer to login to BINANCE -- that supposed barrier is easily overcome through methods of which BINANCE is well-aware and which BINANCE tacitly permits.

30.     To evade geo-location tracking monitors, a customer need only use a Virtual Private Network (VPN) that spoofs the user's actual location.  Instead of marking his/her IP Address with a location in the United States, the BINANCE user employs a VPN so that BINANCE's records will reflect that the user is logging in from a non-U.S. territory that is supported by BINANCE.

31.     One such VPN is PureVPN, which describes the simple process thusly:



32.     As PureVPN explains, as long as the location the user choose through his/her VPN is a non-U.S. country supported by BINANCE, the user's log-in to BINANCE will proceed unfettered:



33. BINANCE is readily aware that U.S.-based users -- including those based within this jurisdiction -- utilize VPN services to access BINANCE; and BINANCE does not prevent such use.

34. To the extent BINANCE claims it has no or few users in this jurisdiction, that claim is belied by the number of BINANCE accountholders in this jurisdiction who take simple steps (well known to BINANCE) to evade BINANCE's lax barriers to entry.

35. A July 2021 report by Inca Digital (a data firm whose technology is used by the U.S. Commodity Future Trading Commission for investigations and market surveillance) highlighted this fact by noting that hundreds of Americans use VPNs to trade cryptocurrency on BINANCE in a manner that is "an open secret in the industry."

36. Upon information and belief, even document production from BINANCE would not definitively demonstrate that U.S.-based users do not use VPNs to access BINANCE's platforms, as

it is not believed that BINANCE tracks such things; and IP Address records for BINANCE users are often tainted with spoofed IP Addresses through this simple method of entry.

37. Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391 because at least one Defendant resides in this jurisdiction and the causes of action accrued in this jurisdiction.

## GENERAL FACTUAL ALLEGATIONS

38. At times material hereto, Plaintiff maintained an account at U.S.-based cryptocurrency exchange Payward, Inc. d/b/a Kraken ("Kraken").

39. At times material hereto, Plaintiff maintained in his Kraken account a cryptocurrency investment portfolio that included Ether (ETH).

40. On or about November 9, 2021, an unknown and unauthorized JOHN DOE infiltrated Plaintiff's Kraken account.

41. As a direct result of the foregoing, JOHN DOE -- on November 9, 2021 -- stole from Plaintiff 105.3267172 ETH that had been stored in Plaintiff's Kraken account.

42. Undersigned counsel engaged international cryptographic tracing and investigative firm Coinfirm to trace the ETH transferred and withdrawn without authorization from Plaintiff's Kraken account.

43. As concluded by Coinfirm, the 105.3267172 ETH transferred from Plaintiff's Kraken account were transferred in a series of transactions to a collection of deposit addresses at BINANCE (the "BINANCE Addresses") believed to be owned, controlled, and maintained by JOHN DOE, *to wit*:

- 10 -

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

Complaint for Damages

| Owner (Address To) | Address To | Transaction Hash | Transfer Date (UTC) | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|---|---|---|
| Binance | 622f12f2042a14d8edfe497e561fb06ec004041d | 4d31c55570c760057f6d4d2a3e07b5ce6cd9478bc072e418e8f211d593f19d07 | 2021-11-10 15:15:17 | 3.00000000 ETH |
| Binance | 622f12f2042a14d8edfe497e561fb06ec004041d | 5fec5a6af929ec972910c1b569a9d012b46f000bff5d5c7e5c47bb07a5c8b075 | 2021-11-10 15:33:50 | 2.00000000 ETH |
| Binance | 858a6c78e580ffe717708d6e5c6bf99ac48d9119 | 0a265c5ac530b171120808d22fa60539ea6494a98d8d7f4ece537753b7638db7 | 2021-11-10 15:00:43 | 1.00000000 ETH |
| Binance | 895806b5f3ea6e9e5424facdc1384b658f34b76a | a9d25b002254d3d814f1023a7479a530d6131a1a59d5a5914402d2a2f14e5ef8 | 2021-11-10 16:03:18 | 2.00000000 ETH |
| Binance | 89f62cfca6e557e378b8c04c0640298db0a5a0d4 | 952553671c0a82dadc6d8d20f418ac9bbf6786b2d13935246bf89fdb0e9f6865 | 2021-11-10 16:31:23 | 2.00000000 ETH |
| Binance | 89f62cfca6e557e378b8c04c0640298db0a5a0d4 | 5c9cd5b97641c15fd6aadc5ba8463f54ae477a658d09599ca9e7acecfba0808b | 2021-11-10 18:29:27 | 2.00000000 ETH |
| Binance | a3f033550f285d7a830c38059001e02b73dc9114 | bee8397d5bbcebfedf83a02226c10ec8defabf4c456a210d84a2fac4003137cc | 2021-11-10 12:05:04 | 4.00000000 ETH |
| Binance | a3f033550f285d7a830c38059001e02b73dc9114 | 0b3f7649774cd493ecc265c41c3ff4102889c0fb7f1580e2d75f8b53fc4058ca | 2021-11-11 19:23:36 | 5.00000000 ETH |
| Binance | a3f033550f285d7a830c38059001e02b73dc9114 | de8cbcf69f0ec3205ce5a6f82b41f2145033e7d851b1249c3e0a6b116a2539fa | 2021-11-12 18:13:22 | 4.00000000 ETH |
| | | | **TOTAL** | **25 ETH** |

44. In addition to the foregoing addresses at BINANCE to which Plaintiff's stolen assets were sent, Coinfirm has traced Plaintiff's stolen assets to the following addresses (the "JOHN DOE Secondary Addresses") as well:

| Destination Address | Funds under claim (average confirmed with five tracing methodologies; stated in cryptocurrency unit) |
|---|---|
| 02fadfc01cbf2a2062a80b7412e84b65ffe1cf07 | 54.30447457 ETH |
| 685463bc1b52f23313d30ef706f58c4a7be40d57 | 15.00000000 ETH |
| 685463bc1b52f23313d30ef706f58c4a7be40d57 | 8.00035963 ETH |
| 079dbd798a04310dd3a4c7d8886c26e5832e6d39 | 5.99972524 ETH |
| 4721f2f31bb5baa827d7bb62b598ea1221dfb996 | 1.00000000 ETH |
| 3841221017f8b9a662843674408d2786270b2208 | 0.01407463 ETH |
| **TOTAL** | **84.31863407 ETH** |

45. On January 7, 2022, undersigned counsel provided written notice to BINANCE advising BINANCE of the theft and requesting that, if the stolen assets were still located in the account(s) tied to the BINANCE Addresses, BINANCE freeze the account(s) controlling those addresses so the assets could not be withdrawn from those addresses.

46. Upon information and belief, the assets at issue are still housed at BINANCE.

47. As of the date of this filing, the 25 ETH located at BINANCE are valued at approximately Sixty-Five Thousand Dollars ($65,000.00).

48. Despite being one of the world's largest cryptocurrency exchanges, BINANCE's "Know Your Customer" and Anti-Money Laundering protocols (KYC/AML) are shockingly lax and do not measure up to industry standards. Thieves are able to launder stolen cryptocurrency through BINANCE because BINANCE has failed to implement security measures that are standard throughout the industry.

49. During the times relevant to this action, and continuing to date, BINANCE has facilitated money laundering by allowing deposits and withdrawals of up to two (2) bitcoin per day though the Binance.com exchange without any form of identification verification. To launder stolen bitcoin, a person creates an account by accessing the BINANCE website. To trade or withdraw up

to two (2) bitcoin per day, the user does not need to provide even the most basic identifying information, such as name, date of birth, address, or other identifiers. All BINANCE requires is a password and an email address. Unlike legitimate virtual currency exchanges, BINANCE does not require these users to validate their identity information by providing official identification documents, given that BINANCE does not require an identity at all. Accounts are therefore easily opened anonymously, including by users in the United States within Florida.

50. BINANCE's practice enabled, and still enables, skillful cryptocurrency hackers and thieves to steal cryptocurrency and launder it by breaking the cryptocurrency into amounts of two (2) bitcoin or less, depositing it, converting the illegally-obtained asset, and withdrawing it -- all without providing identification.

51. As noted above, BINANCE had actual knowledge that cryptocurrency stolen from Plaintiff had been transferred to addresses and accounts on BINANCE's exchange. BINANCE had the ability to freeze those accounts and stop transactions on its exchange involving the stolen cryptocurrency and return the funds to Plaintiff. BINANCE could have done so before some or all of the stolen cryptocurrency left the BINANCE exchange; however, BINANCE provided no response to Plaintiff's plea for assistance and an appropriate remedy. To the extent Plaintiff's stolen assets are no longer at BINANCE, BINANCE either intentionally or negligently failed to interrupt the money laundering process when it could have done so.

52. Since its founding, BINANCE has grown at an enormous rate. In October 2019, a cryptocurrency industry publication reported BINANCE had crossed the $1 billion profit threshold.

53. BINANCE's profits are derived in part from the fees BINANCE receives for transactions on the BINANCE exchange, including trades in which stolen bitcoin is exchanged for other cryptocurrency or fiat, and in part from the frequency and volume of trading that helps enhance and maintain the liquidity that is essential to an efficient and profitable exchange. In other words,

- 13 -

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

BINANCE has a strong monetary incentive to encourage, facilitate, and allow as many transactions on its exchange as possible -- including transactions involving stolen cryptocurrency.

54. As a direct and proximate result of BINANCE's policies and failures, Plaintiff -- and upon information and belief, additional residents of this judicial district -- suffered financial harm when his/their bitcoin was stolen and laundered through BINANCE.

55. As a result of the actions described above, Plaintiff has suffered damages in an amount that will be proven at trial.

56. Plaintiff duly performed all of his duties and obligations; and any conditions precedent to Plaintiff bringing this action have occurred, have been performed, or have been excused or waived.

57. To enforce his rights, Plaintiff has retained undersigned counsel and is obligated to pay counsel a reasonable fee for its services.

## COUNT I – CONVERSION
### [AGAINST JOHN DOE]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 57 above, and further alleges:

58. On November 9, 2021, at the time of the theft, Plaintiff owned and had the right to immediately possess the 105.3267172 ETH -- not just a mere right to payment for the value of those bitcoin -- that was taken from him and transferred to, *inter alia*, the account tied to the BINANCE Addresses and the JOHN DOE Secondary Addresses.

59. When the stolen bitcoin was deposited by a thief/thieves into the BINANCE Addresses and the JOHN DOE Secondary Addresses, JOHN DOE intentionally took possession of and assumed control over the 105.3267172 ETH.

60. JOHN DOE has intentionally exercised control, and continues to exercise control, over the bitcoin in such a way as to exclude Plaintiff from using or possessing the 105.3267172 ETH.

61. JOHN DOE knew the property he received was stolen or obtained in a manner constituting theft.

62. As such, JOHN DOE wrongfully converted the 105.3267172 ETH.

63. JOHN DOE -- through actual fraud, misappropriation, conversion, theft, or other questionable means -- obtained Plaintiff's cryptocurrency, which in equity and good conscience JOHN DOE should not be permitted to hold.

64. The cryptocurrency assets at issue are specific, identifiable property and can be traced in assets of JOHN DOE's account(s) at BINANCE and elsewhere.

65. As a direct and proximate result of the foregoing, Plaintiff suffered the wrongful conversion of personal property whose value exceeds Seventy-Five Thousand Dollars ($75,000.00).

WHEREFORE, Plaintiff ULISES FERNANDEZ MIRO demands entry of a judgment against Defendant JOHN DOE, an individual; for damages, including compensatory damages, interest, expenses, and any other relief the Court deems just and proper, including imposition of a constructive trust upon the property taken from Plaintiff that is held by JOHN DOE in an account(s) at BINANCE and elsewhere.

## COUNT II – AIDING AND ABETTING CONVERSION
### [AGAINST BINANCE]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 57 above, and further alleges:

66. As noted above, JOHN DOE -- through actual fraud, misappropriation, conversion, theft, or other questionable tortious violations -- obtained Plaintiff's cryptocurrency, which in equity and good conscience JOHN DOE should not be permitted to hold.

67. BINANCE has actual knowledge that cryptocurrency stolen from Plaintiff had been transferred to addresses and accounts on BINANCE's exchange by or to JOHN DOE.

68. Notwithstanding the actual knowledge of the theft of Plaintiff's cryptocurrency and the custody of those stolen assets in JOHN DOE's account at BINANCE, BINANCE did not halt the further movement of those stolen funds; which allowed JOHN DOE to abscond with, and convert to his own benefit, Plaintiff's property.

- 15 -

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

69. BINANCE has rendered substantial assistance to JOHN DOE in his commission of the fraud, misappropriation, conversion, theft, or other questionable tortious activity through which JOHN DOE obtained Plaintiff's cryptocurrency.

70. In addition, BINANCE rendered substantial assistance to JOHN DOE by ignoring its own internal policies and procedures and by knowingly maintaining inadequate KYC/AML policies which enable skillful cryptocurrency hackers and thieves such as JOHN DOE to steal cryptocurrency and launder it through the BINANCE ecosystem without providing identification.

WHEREFORE, Plaintiff ULISES FERNANDEZ MIRO demands entry of a judgment against Defendant BINANCE HOLDINGS, LTD. d/b/a Binance, a foreign company; for damages, including compensatory damages, interest, expenses, and any other relief the Court deems just and proper, including imposition of a constructive trust upon the property taken from Plaintiff that is held by JOHN DOE in an account(s) at BINANCE.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

## RESERVATION OF RIGHTS

Plaintiff reserves his right to further amend this Complaint, upon completion of his investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.

Complaint for Damages

        Respectfully submitted,

        **SILVER MILLER**

        By: __/s/ *David C. Silver*__
        DAVID C. SILVER
        E-mail: DSilver@SilverMillerLaw.com
        JASON S. MILLER
        E-mail: JMiller@SilverMillerLaw.com
        4450 NW 126th Avenue - Suite 101
        Coral Springs, Florida 33065
        Telephone: (954) 516-6000

        *Counsel for Plaintiff Ulises Fernandez Miro*

Dated: March __14__, 2022