# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**Civil Action No. 9:22-cv-80399-RS**

ULISES FERNANDEZ MIRO, an individual,

    Plaintiff,

v.

JOHN DOE, an individual;
and BINANCE HOLDINGS, LTD. d/b/a Binance, a foreign company;

    Defendants.

_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT BINANCE'S
MOTION TO DISMISS COMPLAINT**

    Respectfully submitted,

    DAVID C. SILVER
    Florida Bar No. 572764
    E-mail: DSilver@SilverMillerLaw.com
    JASON S. MILLER
    Florida Bar No. 072206
    E-mail: JMiller@SilverMillerLaw.com
    **SILVER MILLER**
    4450 NW 126th Avenue - Suite 101
    Coral Springs, Florida 33065
    Telephone: (954) 516-6000

    *Counsel for Plaintiff Ulises Fernandez Miro*

Plaintiff ULISES FERNANDEZ MIRO ("Plaintiff"); by and through undersigned counsel and pursuant to Fed.R.Civ.P. 7 and Local Civil Rule 7.1, hereby files this memorandum of law in opposition to the motion filed by Defendant BINANCE, a foreign company ("Defendant" or "BINANCE"), seeking to have the Complaint in this matter dismissed.[1]  As explained in greater detail below, the Motion is insufficient and should be denied.  BINANCE's attempt to deny the propriety of jurisdiction in this Court is misplaced, belies BINANCE's public pronouncements of cooperation and transparency, and should not serve as an obstacle to the full and fair adjudication of the claims set forth in the Complaint.  Apparently BINANCE believes it can buy into *Forbes*, sponsor the 2022 White House Correspondents' Dinner "Evening of Magical Realism," and be as American as apple pie; but when you want to hold BINANCE accountable for theft and money laundering, BINANCE claims it has no ties to the United States.  It is time to hold BINANCE accountable.  Most importantly, the Court should believe BINANCE when it describes itself: BINANCE refers to its worldwide operations as an ecosystem compromising of Binance websites, mobile applications, clients, applets, and other applications that are developed to offer Binance Services.[2]   The only time BINANCE is not one company is when it wants to avoid jurisdiction and responsibility.  Such self-serving shapeshifting is untenable and cannot be countenanced.  Personal jurisdiction over BINANCE is proper in this matter, and Plaintiff's claims against BINANCE should not be dismissed.

## FACTUAL BACKGROUND

BINANCE boldly proffers in its Motion several factual denials in an effort to evade personal jurisdiction in this forum.  In proffering its defense, though, BINANCE fails to aver through affidavits or other verified testimony its factual assertions, as required to overcome Plaintiff's jurisdictional allegations.  To be clear, nothing BINANCE says in its lawyer-created paperwork can be taken at face

---

[1] Docket Entry No. ("DE") 8 (the "Motion").

[2] *See*, Binance website: https://www.binance.com/en/terms.

- 1 -

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

value when contradicted by the allegations in the Complaint. BINANCE's approach comes as no surprise, as swearing to false statements would engender for BINANCE far more grave consequences than just having to act as a passive defendant in this lawsuit.

Numerous public reports have identified BINANCE as perhaps the largest vehicle in the world through which cryptocurrency assets are laundered by U.S. residents -- a fact that belies the claim in BINANCE's Motion that it has no connection to this jurisdiction. As reported by *Bloomberg* a few months ago:

> Binance Holdings Ltd. is under investigation by the [United States] Justice Department and Internal Revenue Service, ensnaring the world's biggest cryptocurrency exchange in U.S. efforts to root out illicit activity that's thrived in the red-hot but mostly unregulated market.
>
> *              *              *
>
> The firm, like the industry it operates in, has succeeded largely outside the scope of government oversight. Binance is incorporated in the Cayman Islands and has an office in Singapore but says it lacks a single corporate headquarters. Chainalysis Inc., a blockchain forensics firm whose clients include U.S. federal agencies, concluded last year that among transactions that it examined, more funds tied to criminal activity flowed through Binance than any other crypto exchange.[3]

The last sentence cited above exactly parallels the allegations Plaintiff has made in his Complaint: that he was robbed of 105.3267172 ETH -- valued at approximately Four Hundred Eighty-Eight Thousand Dollars ($488,000.00) -- and that the person who robbed him (Defendant JOHN DOE) has funneled those stolen assets through a BINANCE account. The stolen assets were transferred from a cryptocurrency account Plaintiff maintained in Florida to the BINANCE account, where the assets are believed to still be held. The connection to Florida in this case is clear, notwithstanding BINANCE's desire to argue otherwise.

---

[3] Complaint at ¶ 8, citing "Binance Faces Probe by U.S. Money-Laundering and Tax Sleuths," *Bloomberg*, May 13, 2021, https://www.bloomberg.com/news/articles/2021-05-13/binance-probed-by-u-s-as-money-laundering-tax-sleuths-bore-in.

In fact, earlier this year, BINANCE publicly announced that it was teaming up with the National Cyber-Forensics and Training Alliance (NCFTA) -- an American non-profit entity with offices in spanning across the United States -- to "fight against cybercrime, ransomware, and terrorism financing."[4]  According to Tigran Gambaryan, Vice President of Global Intelligence and Investigations at BINANCE:

> Joining the NCFTA is an important step in our joint fight against cybercrime, securing the cryptocurrency ecosystem for the entire community.  Binance aims to be the leading contributor in the fight against cybercrime, ransomware, and terrorism financing.  We will continue our fight against cybercrime and increase our level of cooperation and transparency through our partnership with the NCFTA.[5]

The press release related to this announcement even states: "To date, Binance has cooperated with hundreds of criminal investigations, which have led to high-profile arrests, including a cybercriminal group laundering $500M in ransomware proceeds."[6]  "Cooperation" only takes place voluntarily, which BINANCE clearly has done in "hundreds of criminal investigations" and through its "partnership" with the American-based NCFTA and its activities throughout the United States, including within this jurisdiction.  It would be disingenuous for BINANCE to publicly laud its willingness to voluntarily cooperate in investigations against cybercrime yet refuse to participate in this legal proceeding wherein Plaintiff has alleged that BINANCE itself played a vital role in the cybercrime committed against him.  Within a few weeks after the crime had been committed upon Plaintiff, Plaintiff put BINANCE on notice of the crime and of BINANCE's connection to, and participation

---

[4] "NCFTA onboards crypto exchange Binance to fight against cybercrime," *CoinTelegraph*, Jan. 18, 2022, https://cointelegraph.com/news/ncfta-onboards-crypto-exchange-binance-to-fight-against-cybercrime

[5] Complaint at ¶ 9, citing "Binance Becomes the Blockchain and Cryptocurrency Industry's First to Join the National Cyber-Forensics and Training Alliance (NCFTA)", *PR Newswire*, January 18, 2022, https://www.prnewswire.com/news-releases/binance-becomes-the-blockchain-and-cryptocurrency-industrys-first-to-join-the--national-cyber-forensics-and-training-alliance-ncfta-301462332.html.

[6] *Id.*

- 3 -

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

in, the crime.[7]  BINANCE is now not only distancing itself from the crime but also distancing itself from participating in any remedy for the harm in which it played a vital part.

The CEO of BINANCE admits that BINANCE has the information and opportunity to stop these thefts and stop money laundering in its tracks.  Specifically, Mr. Zhao has stated: "If you look at data, nobody smart does that.  Crypto is too traceable.  The governments around the world are increasingly very good at tracing crypto transactions.  So crypto is not good for that."[8]  BINANCE was provided the tools to stop this theft and money laundering but chose not to.  And while Mr. Zhao says that "[W]e KYC everybody…", where is the proof of that?  The lawyers have not told this Court what the account information says, who traded Plaintiff's stolen assets, and how much BINANCE directly benefited through fees for trading stolen assets.

Without BINANCE's participation, JOHN DOE would not have been able to launder the funds stolen from Plaintiff.  Moreover, to the extent BINANCE has not already processed and disbursed those laundered funds, those funds are believed to still be held by BINANCE.  BINANCE is a key player in the harm that has been inflicted upon Plaintiff, and BINANCE must be a party before the Court to ensure that the proper legal adjudication and remedies are effectuated.

---

[7] Complaint at ¶ 45.

[8] "Opinion: Binance CEO explains why it's misleading to say crypto is anonymous," April 6, 2022, https://abc17news.com/money/cnn-business-consumer/2022/04/06/opinion-binance-ceo-explains-why-its-misleading-to-say-crypto-is-anonymous/.

## LEGAL ARGUMENT[9]

### I. BINANCE'S ATTACK ON PERSONAL JURISDICTION IS INSUFFICIENTLY SUPPORTED

"[A] plaintiff bears the burden of establishing a prima facie case of personal jurisdiction, meaning it must present enough evidence to withstand a motion for a directed verdict."[10] Plaintiff submits that with the well-pleaded allegations in his Complaint, he has met that burden.

"A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of his position."[11] If the defendant does not submit an affidavit that sufficiently contests the jurisdictional facts alleged in the complaint, the burden never shifts back to the plaintiff to establish jurisdiction by affidavit or other evidence.[12] As this Court stated in *Barriere v. Juluca*:

> Because the Court must accept Plaintiffs' allegations absent any challenge that would shift the burden, and because Defendant has not properly made such a challenge, the Court finds that Plaintiffs have sufficiently alleged that Defendant [ ] has such minimum contacts with the forum to allow for personal jurisdiction under the Florida long arm statute.[13]

---

[9] "Personal jurisdiction in a federal diversity action is governed by the state law standard of the state in which the federal court sits." *Tellschow v. Aetna Cas. & Sur. Co.*, 585 F.Supp. 593, 593 (S.D. Fla. 1984). In light of this standard, Plaintiff cites herein case precedent from both the state courts of Florida as well as federal courts.

[10] *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021).

[11] *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989) (internal citation omitted); *see also*, *Sayers Constr., LLC v. Timberline Constr., Inc.*, 306 So. 3d 275, 279 (Fla. 3d DCA 2020) ("Although the allegations in the second amended complaint were conclusory, we must take them as true because the affidavit [the defendant] filed did not challenge them."); *Machtinger v. Inertial Airline Servs. Inc.*, 937 So. 2d 730, 734 (Fla. 3d DCA 2006) ("A defendant contesting jurisdiction must file affidavits in support of his motion to dismiss.").

[12] *See, Thorpe v. Gelbwaks*, 953 So. 2d 606, 610-611 (Fla. 5th DCA 2007); *Emerson v. Cole*, 847 So. 2d 606, 609-610 (Fla. 2d DCA 2003).

[13] *Barriere v. Juluca*, Case No. 12-23510-CIV, 2014 WL 652831, at *5 (S.D. Fla. Feb. 19, 2014).

Here, just as in *Barriere*, Defendant failed to file any affidavits, testimony, or documents in support of its Motion. Thus, as in *Barriere*, "it cannot be said that Defendant raised a 'meritorious' defense to personal jurisdiction."[14]

To the extent that Defendant first proffers the required evidentiary support with its Reply Brief[15] -- thus robbing Plaintiff of his ability to address such evidence in this opposition memo -- or if the Court is inclined to conclude the allegations in the Complaint are not specific enough, Plaintiff respectfully requests that the Court forestall a ruling on the Motion and permit limited jurisdictional discovery to more specifically scrutinize the bases upon which the Court should exercise personal jurisdiction over Defendant. Among other things, Plaintiff would seek production from Defendant of evidence showing BINANCE account activity in Florida, transfers to BINANCE emanating from Florida, BINANCE's cooperation with state and federal law enforcement agencies in Florida investigating cybercrimes, and use/location of computer servers in Florida through which the crime perpetrated upon Plaintiff was conducted. "Resolution of a pretrial motion that turns on findings of fact -- for example, a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P 12(b)(2) -- may require some limited discovery before a meaningful ruling can be made."[16] Plaintiff will separately file a motion requesting limited jurisdictional discovery if necessary and if the Court so desires. As BINANCE stated in the NCFTA press release referenced above, the company strives for "transparency." Refusing to accede to jurisdictional discovery would belie the public pronouncement of transparency on which BINANCE claims to pride itself and would unjustly keep hidden the valid grounds upon which personal jurisdiction over BINANCE would be proper in this Court.

---

[14] *Id.*

[15] *See*, *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.").

[16] *See*, *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997).

## II. BINANCE HAS SUFFICIENT CONTACTS WITH FLORIDA FOR THE COURT TO EXERCISE PERSONAL JURISDICTION

BINANCE argues in its Motion that the Court would be wrong to exercise personal jurisdiction over BINANCE in this action because BINANCE purportedly has too tenuous a connection to Florida to justify the exercise of personal jurisdiction and because the causes of action set forth in the Complaint likewise do not provide a justifiable basis upon which to support personal jurisdiction. Plaintiff submits that BINANCE misstates both the extent of its involvement in Florida as well as the connectivity between the causes of action and the defendants in this matter.

### A. Binance is Subject to General Jurisdiction in Florida

"Binance has been described as an international cryptocurrency exchange that hops around from jurisdiction to jurisdiction to avoid regulators."[17] Notwithstanding BINANCE's efforts to position itself as not existing in any Earthly jurisdiction at any one time and not purposefully engaged in any activity in Florida, BINANCE exists in Florida in a manner that supports this Court's exercise of general jurisdiction over BINANCE.

According to BINANCE, its connections to Florida are not "so 'continuous and systematic' as to render it at home" in Florida.[18] As BINANCE would have the Court believe, even if there are people in Florida who electronically use BINANCE's online cryptocurrency exchange (which BINANCE generally denies without verifiable evidence), that would not be sufficient to support invocation of personal jurisdiction over BINANCE in this court. Such an argument was raised by another foreign-based international e-commerce giant (Alibaba) in its effort to avoid personal jurisdiction in a lawsuit in the United States, and the court in that matter explained the flaw of such a defense:

---

[17] *Cox v. CoinMarketCap OpCo LLC*, Case No. CV-21-08197-PCT-SMB, 2021 WL 5908206, at *1 (D. Ariz. Dec. 14, 2021).

[18] Motion at 4.

>   Defendants next argue that Alibaba has failed to show that their role in the transactions at issue was "purposeful." How could it be their doing, Defendants ask, if "unbeknownst to [them]," New York-based users of their website chose to effectuate cryptocurrency sales by initiating "data exchanges" with Defendants' out-of-state electronic "apparatus"? (Dkt. No. 130 at 2.) Defendants' argument appears to boil down to the questionable claim that an out-of-state vendor selling intangible goods and services online has not acted intentionally with respect to an in-state buyer's subsequent purchase decision. Such a proposition, predictably enough, runs contrary to precedent.[19]

Plaintiff has alleged that BINANCE is indeed utilized by customers in the United States, including in this jurisdiction[20]; even if BINANCE wishes that were not true. Though the specific extent of that usage is unknown to Plaintiff, narrowly-focused discovery (as suggested above) into BINANCE's corporate records and usage logs would provide insight into that statistic with greater precision than Plaintiff could provide on his own.

Likewise, as noted above, BINANCE itself has admitted that it has cooperated in "hundreds of criminal investigations"; and Plaintiff believes that many of those investigations routinely run through the state of Florida. Again, the documentation of those efforts resides in BINANCE's records; and Plaintiff submits that a brief foray into those records (properly redacted, as necessary) will unequivocally demonstrate the depths of BINANCE's regular and systematic activities in Florida.

Earlier this year, BINANCE bought a $200 million ownership interest in *Forbes*.[21] Last month, BINANCE publicly touted that it was the official cryptocurrency exchange partner for the 64th Annual GRAMMY Awards.[22] And as detailed in the Complaint, BINANCE "*launched several celebrity-*

---

[19] *Alibaba Group Holding Ltd v. Alibabacoin Foundation*, Case No. 18-CV-2897 (JPO), 2018 WL 5118638, at *4 (S.D.N.Y. Oct. 22 2018) ("*Alibaba*") (citations omitted).

[20] *See*, *e.g.*, Complaint at ¶¶ 7, 33.

[21] "Binance, led by the world's richest crypto billionaire, is taking a $200 million stake in Forbes," February 10, 2022, https://www.cnbc.com/2022/02/10/forbes-spac-binance-led-by-the-worlds-richest-crypto-billionaire-is-taking-a-200-million-stake-in-forbes-.html.

[22] "Binance Signs On To Be The Official Cryptocurrency Exchange Partner of the 64th Annual GRAMMY Awards®" *Binance Blog*, March 31, 2022,

*fueled advertisements during the [February 2022] Super Bowl to solicit accountholders in the United States, including in this jurisdiction.*"²³   Among the celebrities promoting BINANCE's brand are Jimmy Butler, a player for the National Basketball Association's Miami Heat who has a legion of fans across South Florida²⁴:



BINANCE's ecosystem reaches all across the United States, including in Florida.  In its Motion, BINANCE asserts that these marketing efforts are not solicitations of Florida-based consumers; rather, they are nothing more than a "*consumer empowerment campaign.*"²⁵  When you review this advertisement, though, the advertisement is for BINANCE as BINANCE describes itself: an ecosystem.  Jimmy Butler is being paid by BINANCE to attract users to the BINANCE ecosystem.

---

https://www.binance.com/en/blog/markets/binance-signs-on-to-be-the-official-cryptocurrency-exchange-partner-of-the-64th-annual-grammy-awards%C2%AE-421499824684903639.

²³ Complaint at ¶¶ 23-24.

²⁴ Complaint at ¶¶ 25-26.

²⁵ Motion at 8-9.

The advertisement does not parse out any particular business entity; rather, it blends BINANCE into what it really is – one big company that does business across the world, including in Florida. The argument in BINANCE's Motion simply serves as a factual denial of the allegations in Plaintiff's Complaint that BINANCE is indeed soliciting clients to further its financial interests in Florida. Those allegations, and all reasonable inferences to be drawn therefrom, must be accepted as true at this stage of the pleadings. "Technology has opened up new avenues for solicitation. A new means of solicitation, though, is not any less of a solicitation."[26]

Similarly, the use of BINANCE's services in Florida through Virtual Private Networks (VPNs) -- a practice of which BINANCE is fully aware and which it does nothing to halt -- further supports the basis of exercising general jurisdiction over BINANCE in this matter.[27] To oppose such a finding, BINANCE's Motion cites *Kennedy v. Heidi Motel Inc.*, No. 19-cv-60946, 2019 WL 11553695, at *5 (S.D. Fla. June 20, 2019) for the proposition that accessing a "[d]efendant's website in Florida does not demonstrate that [d]efendant has availed itself of Florida's laws, deliberately engaged in activities within the state, or otherwise conducted significant business activities there," which BINANCE bootstraps into an argument that this Court has rejected the theory that a business could be hauled into court in any state where its website could be accessed.[28] In *Kennedy*, though, the Court limited its holding to the specific facts of that case, in which the business was a "mom-and-pop Motel that maintains a website with reservation capability, but that otherwise conducts business solely in Georgia" and that other than its website had solicited no business in Florida.[29] "Considering the relative size of Defendant's business," the Court in *Kennedy* found it would be fundamentally unfair to

---

[26] Complaint at ¶ 27.

[27] Complaint at ¶¶ 28-36 (alleging VPN usage to access BINANCE services in Florida).

[28] Motion at 7-8.

[29] *Kennedy*, 2019 WL 11553695, at *5.

force the mom-and-pop Georgia motel to litigate in Florida.[30] BINANCE is far from a mom-and-pop operation serving roadside travelers in a small Georgia town. BINANCE is "one of the world's largest cryptocurrency exchanges"[31] and has a reported market value of approximately $300 billion -- nearly six times the market cap of Coinbase, its nearest competitor.[32] BINANCE serves consumer all over the world, and its reach into the United States (including Florida) is only growing by the day. Suggesting that global crypto giant BINANCE and the mom-and-pop Heidi Motel in Helen, Georgia have the same measure of contact with this jurisdiction is akin to suggesting that a Little League baseball team comprised of 8-year-old players in Helen, Georgia and the New York Yankees or Los Angeles Dodgers have equivalent measures of wealth and worldwide influence.

Lastly, BINANCE cites in its Motion to this Court's decision in *Guarini v. Doe and Binance*, Case No. 21-cv-81890-MIDDLEBROOKS (S.D. Fla. Apr. 5, 2022) for the proposition that this Court has purportedly concluded -- with everlasting certitude -- that personal jurisdiction over BINANCE does not exist in this Court. In doing so, BINANCE misrepresents both the holding and the gravity of the *Guarini* decision. The Amended Complaint on which the Court rendered its decision in *Guarini* presented a far more constricted set of jurisdictional allegations than the Complaint in the instant matter does. Plaintiff's Complaint herein is far broader, and alleges a much more substantial basis demonstrating the propriety of personal jurisdiction over BINANCE, than the pleading in *Guarini* did. While Plaintiff would respectfully disagree with the Court's ruling in *Guarini*, that ruling is only of

---

[30] *Id.*

[31] Complaint at ¶ 48.

[32] "He became as rich as Mark Zuckerberg virtually overnight. How Binance founder 'C.Z.' Zhao became a $74 billion man while moving fast and breaking things in crypto", *Fortune*, March 29, 2022, https://fortune.com/longform/binance-changpeng-cz-zhao-net-worth-crypto-exchange-trading/ (noting that "Sources inside Binance say that based on that volume of trades and fees, and crypto's projected growth rate, the company is now worth about $300 billion, nearly six times the market cap of Coinbase, its nearest competitor.").

modest importance in the instant case; which must be adjudicated on the factual allegations presented-and-accepted-as-true (at this Motion to Dismiss stage) herein, not on a far less expansive set of facts that were presented in a separate lawsuit.

### B. Binance is Subject to Specific Jurisdiction in Florida

As it relates to this specific litigation, BINANCE asserts in its Motion that "a plaintiff must demonstrate that the non-resident defendant committed a specific act enumerated in the Florida long-arm statute, and that the cause of action arises from the enumerated act."[33] To distance itself from this jurisdiction, BINANCE expends great efforts to drive a wedge between itself and its United States-based entity Binance.US.[34] However, nowhere in the Complaint does Plaintiff allege that BINANCE's presence in Florida is entirely a result of Binance.US's operations. In fact, the existence of Binance.US is not the only manner in which BINANCE undertakes actions within Florida.

Additionally, BINANCE argues in its Motion that even if BINANCE's activities were sufficient to establish business by BINANCE in Florida, "*Plaintiff has not shown that the cause of action in this case 'arises from such business activity.'*"[35] That argument is simply belied by the allegations of the Complaint[36] and again props up the existence of Binance.US as a "strawman" that BINANCE seeks to knock down. Plaintiff's allegations are not based solely upon the actions of Binance.US; rather, they are based upon the actions and inactions of BINANCE itself -- operating through its own self-

---

[33] Motion at 10.

[34] *Id.* at 11-12.

[35] *Id.* at 12 (citing Fla. Stat. § 48.193(1)(a)).

[36] *See, e.g.*, Complaint at ¶ 17 ("Plaintiff's claims also arise out of or relate to forum-related activities. For example, Plaintiff's conversion claim arises out of or relates to JOHN DOE stealing, and BINANCE taking possession of, Plaintiff's stolen cryptocurrency when it was transferred from Plaintiff's possession in Florida to the BINANCE exchange."), Complaint at ¶¶ 48-49 (pointing to BINANCE's knowingly-insufficient "Know Your Customer" and Anti-Money Laundering protocols that facilitates laundering of stolen assets "including by [BINANCE] users in the United States within Florida.").

described ecosystem of business entities and services, only one of which is Binance.US. That ecosystem exists in Florida and allowed JOHN DOE to convert and launder through a BINANCE account the cryptocurrency assets stolen from Plaintiff. The causes of action asserted against the defendants (Conversion; Aiding and Abetting Conversion) quite patently arise from such activity, and any argument to the contrary is misplaced.

In its Motion, BINANCE cites *Walden v. Fiore*, 571 U.S. 277 (2014) for the proposition that "mere injury to a forum resident is not a sufficient connection to the forum" to support personal jurisdiction over a foreign defendant. However, *Walden* is clearly inapposite to the instant matter; as the plaintiff in *Walden* was a Georgia resident who was injured in Georgia yet who sought to bring a civil lawsuit in Nevada for reasons the court found to be ephemeral and "not the sort of effect that is tethered to Nevada in any meaningful way" to either his injury or the accrual of the causes of action asserted in the lawsuit.[37] To the contrary, Plaintiff in the instant matter is a Florida resident who was victimized by a crime in Florida -- a crime effectuated by both JOHN DOE and BINANCE through the transfer of stolen funds Plaintiff had been holding in Florida but which were transferred from Florida to BINANCE -- which is why he is pursuing relief in this Court. The "business activity" that draws BINANCE into this lawsuit is precisely and inextricably entwined with the harm that has been inflicted upon Plaintiff. BINANCE's arguments to the contrary are misplaced and patently wrong.

For the reasons set forth above, as well as those Plaintiff can provide in greater detail following a brief round of jurisdictional discovery (if necessary), Plaintiff submits that the Court is well within its proper authority to exercise personal jurisdiction over BINANCE in this matter. BINANCE was put on notice by Plaintiff of the theft from Plaintiff that occurred; and BINANCE must remain a party to these proceedings -- with all the "transparency" BINANCE claims is its mantra in combatting

---

[37] *Walden*, 571 U.S. at 290 (explaining that the plaintiff's alleged injury would have been experienced in California, Mississippi, or wherever else he might have traveled).

cybercrime -- to effectuate justice and the proper legal remedies. BINANCE cannot and must not be allowed to play a vital role in the theft of cryptocurrency assets in Florida and then, when notified of such theft, refuse to cooperate with the victim and refuse to be held accountable for implementing the very results for which BINANCE claims to advocate.

### III. BINANCE SHOULD BE REQUIRED TO IMPOSE A CONSTRUCTIVE TRUST OVER THE ASSETS STOLEN FROM PLAINTIFF

Lastly, Defendant argues that Count II of the Complaint ("Aiding and Abetting Conversion") should be dismissed as insufficiently pleaded. In essence, BINANCE argues that the Complaint does not adequately allege -- and that Plaintiff purportedly cannot allege -- that BINANCE had knowledge of the conversion of Plaintiff's stolen property and that BINANCE provided substantial assistance to JOHN DOE in committing the conversion. BINANCE is incorrect on both points.

The Complaint clearly asserts that BINANCE not only had knowledge of the theft, BINANCE sat on that knowledge and -- by that inaction -- "*either intentionally or negligently failed to interrupt the money laundering process when it could have done so.*"[38] While BINANCE argues that banking institutions are not required to investigate suspicious transactions and thus should not be held liable for aiding and abetting theft in instances like the one described by Plaintiff, it is unassailable that **BINANCE is not a bank**; therefore, reliance on case law that protects banks is inapposite. Though BINANCE provides its users some financial services, BINANCE is not regulated as a bank and, in fact, fights such regulation just as it is fighting personal jurisdiction in this case. Likewise, BINANCE's argument that it cannot be held to have "*provided substantial assistance*" to JOHN DOE's theft and conversion efforts also relies entirely on case law pertaining to the protections that banks are afforded under the law. BINANCE is not a bank, though, and its reliance on case law protecting the banking industry is not the open-and-shut argument BINANCE purports it to be.

---

[38] Complaint at ¶¶ 45-51.

BINANCE aided and abetted JOHN DOE's conversion of Plaintiff's assets. BINANCE not only was provided notice from Plaintiff giving BINANCE direct knowledge of the theft, the circumstances alleged in the Complaint plausibly support a reasonable inference that BINANCE has knowledge of the theft.[39] Moreover, the Complaint asserts adequate allegations of BINANCE's "substantial assistance" to JOHN DOE's conversion to survive BINANCE's Motion.[40] The Court is well within its authority to impose the relief requested by Plaintiff, and Count II of the Complaint should therefore not be dismissed.

## CONCLUSION

For all of the reasons stated above, Plaintiff ULISES FERNANDEZ MIRO respectfully requests that the Court: (a) deny the Motion to Dismiss filed by Defendant BINANCE, and (b) enter such other relief as the Court deems just and proper.

Respectfully submitted,

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101
Coral Springs, Florida 33065
Telephone: (954) 516-6000

By: _/s/ David C. Silver_
DAVID C. SILVER
Florida Bar No. 572764
E-mail: DSilver@SilverMillerLaw.com
JASON S. MILLER
Florida Bar No. 072206
E-mail: JMiller@SilverMillerLaw.com

*Counsel for Plaintiff Ulises Fernandez Miro*

---

[39] *Cabot East Broward 2 LLC v. Cabot*, Case No. 16-61218-cv-DIMITROULEAS, 2016 WL 8739579, at *3-4 (S.D. Fla. Oct. 25, 2016) (denying motion to dismiss aiding and abetting claims; "[A]ctual knowledge of another's wrongful conduct is nearly universally found based upon circumstantial evidence.")

[40] *Cabot*, *supra* at *4 (noting that allegations of aiding and abetting conversion are not subject to heightened pleading requirements).

Case No. 9:22-cv-80399-RS

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court on this __12th__ day of May 2022 by using the CM/ECF system and that a true and correct copy will be served via electronic mail to: **DANIEL L. RASHBAUM, ESQ.**, MARCUS NEIMAN RASHBAUM & PINEIRO LLP, *Counsel for Defendant Binance*, 2 South Biscayne Boulevard - Suite 2530, Miami, FL 33131, E-mail: drashbaum@mnrlawfirm.com; and **KAREN R. KING, ESQ.**, MORVILLO ABRAMOWITZ GRAND IASON & ANELLO, P.C., *Counsel for Defendant Binance*, 565 Fifth Avenue, New York, NY 10017, E-mail: kking@maglaw.com.

                         */s/ David C. Silver*
                         DAVID C. SILVER